[No. 11611. Department One. March 20, 1914.]

### HARRY W. WENTWORTH *et al., Respondents,* v. GEO. M. McDONALD *et al., Appellants.*[1]

HOMESTEADS — RELINQUISHMENT — ABANDONMENT. Under Rem. & Bal. Code, § 535, providing that a homestead can be abandoned only by the filing of a declaration of abandonment or by a grant thereof, a homestead is not lost by removal therefrom; notwithstanding that §§ 528, 529, 552, and 559, defining homesteads and providing for their selection provide that the homestead claimant must "reside" on the land, and that the homestead is exempt only while "occupied as such," and that the premises must be "actually maintained and used for a homestead" and "shall not be devoted to any other purpose;" since such provisions must be construed as having reference to the qualifications of the claimant and the manner of use at the time of its selection.

EVIDENCE—JUDICIAL NOTICE. The courts may take judicial notice of the financial famine and enforced liquidation of 1893.

Appeal from a judgment of the superior court for Douglas county, Steiner, J., entered June 19, 1913, upon findings in favor of the plaintiffs, in an action to quiet title, tried to the court. Affirmed.

*Sam B. Hill* and *Post, Avery & Higgins,* for appellants.

*Chas. R. Sargent* and *Williams & Corbin,* for respondents.

[1]Reported in 139 Pac. 503.

CHADWICK, J.—On October 21, 1907, Fred A. Frisbie executed and delivered to Geo. M. McDonald & Company his promissory note, for the sum of $125. At that time, Frisbie was living on a quarter section of land, having acquired full title thereto on August 2, 1905. He was, at the time of the execution of the note, the head of a family, and the note evidenced a community debt. On April 29, 1908, Frisbie filed a declaration of homestead. On October 7, 1908, Geo. M. McDonald & Company recovered a judgment against Frisbie. On October 20, 1909, Frisbie left the land so claimed as a homestead without any intention of returning thereto, and has since resided with his family at some other place.

Frisbie and wife never executed an abandonment under Rem. & Bal. Code, § 535 (P. C. 223 § 13); and on November 8, 1911, they sold and conveyed the land to Henry W. Wentworth. On December 7, 1912, an execution was issued upon the McDonald judgment and the land was sold, with actual notice that the land had been claimed as a homestead, to the defendant Geo. M. McDonald & Co., Inc.; whereupon the plaintiffs brought this action to quiet title. The court concluded that the execution sale was null and void, and conveyed nothing, as against these plaintiffs, and accordingly quieted title in them.

It is the contention of the defendants that, notwithstanding Rem. & Bal. Code, § 535 (P. C. 223 § 13), which provides that "a homestead can be abandoned only by a declaration of abandonment, or a grant thereof executed and acknowledged," Id., §§ 528, 529, 552, and 559 (P. C. 223 § 1; 81 § 863; 223 § 47; 223 § 61), makes it certain that a homestead claimant must "reside" on the land; that the land is exempt from execution and attachment as a homestead only "while occupied as such;" that the premises included in the homestead must be "actually maintained and used for a homestead by the claimants and shall not be devoted to any other purpose;" that the homestead can be claimed only when the claimant "is residing on the premises and intends to reside thereon."

An engaging argument is made by defendants to sustain their contention, but it is based upon the theory that the sections of the statute relied on are active and are vital to control the questions presented by the record. The act of 1895, p. 109, ch. 64, goes to the manner, and not to the time, of selection. It follows that, when once formally selected, the words quoted cannot be held to be controlling in the face of the positive declaration that a homestead can be abandoned only by a formal declaration of abandonment.

It is uniformly held that homestead and exemption laws are in subservience to the interest that the public has in the maintenance and protection of the home of the individual citizen. Recognizing that the sheet anchor of government is the home, the people of this state wisely ordained that the legislature should protect from forced sale a certain portion of the homestead of all heads of families. Const., art. 19, § 1.

The first legislature of the state seemed to be satisfied with what had been done by the legislatures of the territory. Code of 1881, ch. 32. In 1893, however, the country entered into an era of financial famine and enforced liquidation, of which the courts may take such judicial notice as comes to all men from actual experiences. The legislature of 1895, in its endeavor to further protect the debtor from the enforced extortions of creditors and make the home more secure, passed a new act which we have held to be a complete act in itself, except in so far as the time of selection is concerned.

To hold that a homestead can only be abandoned or conveyed in a formal way—that is, by a paper duly executed and acknowledged—is in harmony with the general policy of the law and our constitution, which was designed to protect the debtor from his own unthrift and improvidence as well as to curb the avarice of the creditor.

At the time the act of 1895 was passed, the rule was universal in this country, excepting only in the state of California, where a statute like our own had been passed, that a homestead might be abandoned by a removal, or by conduct

evidencing an intent to reside elsewhere. Waples, Homesteads and Exemptions, ch. 18. The universality of this rule was known to the legislature, and we must credit that body with using the word "abandoned" advisedly, and with knowledge that it had theretofore been held that a removal without intent to return was an abandonment. If it were not so, the word abandonment has no place in the statute, and the law itself was abortive; for, at the time it was passed, a homestead could only be conveyed, granted or waived by a formal instrument. It may be that the words "actually intended and used" in § 552, and "The person . . . is residing on the premises," are not in harmony with § 535, as contended. It is not uncommon for the legislative body, when adopting a new policy, to retain some of the features of the old and thus create a seeming inconsistency; but its power to define the word abandonment, and to eliminate every act other than the making of a formal written relinquishment, duly acknowledged, cannot be questioned. No constitutional limitation intervenes. Taking the act of 1895 by its four corners, it seems to us that §§ 552 and 559 (§ 529 is in the code of 1881) can only be construed as having reference to the qualifications of the claimant and the manner of the use at the time of selection. When so considered, they are not in disharmony with § 535.

In *Hookway v. Thompson*, 56 Wash. 57, 105 Pac. 153, the binding quality of the law (§ 535) was recognized. The writer of the opinion said:

"It may be remarked that there is no provision in the law for the abandonment of the homestead by a discontinuance of possession, but that the statute expressly provides that a declaration of abandonment is effectual only from the time it is filed in the office in which this homestead was recorded."

The question before us was then discussed, and certain California cases were cited and accepted as controlling authority. Other California cases in point are: *Porter v. Chapman*, 65 Cal. 365, 4 Pac. 237; *Tipton v. Martin*, 71

Cal. 325, 12 Pac. 244; *Waggle v. Worthy,* 74 Cal. 266, 15 Pac. 831, 5 Am. St. 440; *Simonson v. Burr,* 121 Cal. 582, 54 Pac. 87; *Hohn v. Pauly,* 11 Cal. App. 724, 106 Pac. 266.

The compiler of the article on Homesteads in Cyc., notes, without adverse criticism, that, where the legislature has said that a homestead can be abandoned only by a declaration signed and acknowledged, a removal will not destroy the exemption character of the property. 21 Cyc. 608. It may be, in some instances at least, or most frequently, as counsel for appellants insist, that our holding will permit most flagrant frauds. This argument should be addressed to the legislature, where, if deemed to be sound, the fault may be corrected. Courts cannot nullify statutes because they work inequity, or defeat their purpose because they do not sound in reason.

The point is made that the declaration of homestead is recorded in miscellaneous records in the office of the auditor of Douglas county, instead of in the record of deeds. The statute does not provide, in terms, for the recordation of the claims of homestead in any particular record, but that it shall be filed in the office of the auditor. The object of the provision is to give notice. Inasmuch as the appellants had actual notice of the claim of homestead before the sale, we do not feel that we are called upon to pass on this question.

Affirmed.

CROW, C. J., GOSE, ELLIS, and MAIN, JJ., concur.