[No. 13601. Department One. December 29, 1916.]

CORNELIA BYAM, *Respondent*, v. LON ALBRIGHT *et al.*,
*Appellants.*[1]

HOMESTEAD—RESIDENCE—STATUTE—CONSTRUCTION.  Where a husband and wife, for a year or more prior to the filing of a declaration of homestead, actually made their home upon the land, although the husband was absent considerable of the time on business, their homestead right was perfected, under Rem. Code, § 552, providing that the homestead must "be actually intended and used for a home for the claimants," as that has reference only to the qualifications at the time of the filing.

SAME—"ABANDONMENT"—REMOVAL FROM STATE—STATUTES—CONSTRUCTION.  A homestead right, duly perfected by husband and wife residing on the land, is not abandoned by the subsequent removal of the claimants from the state, in view of Rem. Code, § 535, providing that a homestead can be abandoned only by a declaration of abandonment, or a grant thereof, executed and acknowledged by the husband and wife, and Id., § 536, providing that a declaration of abandonment shall be effectual only from the time it is filed, and Id., § 561, providing that the homestead shall descend to heirs or devisees and shall in no case be liable for the debts of the owner except as provided in the act.

SAME.  Rem. Code, § 571, providing that nothing in this *chapter* shall be construed to exempt from attachment or execution the property of nonresidents, applies only to the Code of 1881, and not to the subsequent act of 1895; and hence does not prevent persons removing from the state from claiming homestead rights in lands acquired under the act of 1895.

SAME — SALE UNDER EXECUTION — "NECESSARIES."  Under Rem. Code, § 564, providing that no property shall be exempt from execution for actual necessities, not exceeding $50 in value furnished within sixty days, an execution sale of a homestead upon a judgment for $645 is not validated by the fact that $32.79 of the sum received was for necessities furnished within the time limited, there being no allegation in the complaint that part was for necessities.

Appeal from a judgment of the superior court for Mason county, Mitchell, J., entered February 8, 1916, upon findings in favor of the plaintiff, in an action to quiet title, tried to the court.  Affirmed.

[1] Reported in 162 Pac. 10.

*Troy & Sturdevant, A. J. Falknor,* and *Bigelow & Manier,* for appellants.

*Tom Alderson,* for respondent.

PARKER, J. — The plaintiff, Cornelia Byam, commenced this action in the superior court for Mason county seeking a decree quieting her title to a forty-acre tract of land in that county which she claims as her separate property and her homestead. The defendants Lon Albright and Dora W. Troutman claim interest in the land under an execution sale. C. P. Byam, the plaintiff's husband, was made a defendant to the end that her title might be quieted as against any community claim he might make to the land. Trial upon the merits resulted in findings and decree in favor of the plaintiff as prayed for, from which the defendants Albright and Troutman have appealed.

At all times since prior to the year 1912, respondent and defendant C. P. Byam were, and now are, husband and wife. In January of that year a Mrs. Adams conveyed to respondent the land in question, which conveyance was, as claimed by respondent, in consideration of money paid by her son, who caused the conveyance to be so made as a gift to her from him. The trial court found that the land was so acquired by respondent as a gift from her son, and concluded that it thereby became her separate property. In July, 1912, respondent duly executed and filed for record in the office of the auditor of Mason county her declaration claiming the land as a homestead, her husband never having filed any declaration of homestead. The value of the land and improvements thereon has at no time exceeded the sum of $2,000.

In the spring of 1912, the community consisting of respondent and defendant C. P. Byam had become indebted to appellant Albright in the sum of $645, for the recovery of which he commenced an action in the superior court for Mason county in April of that year. In May, 1913, judgment was rendered in that action for the amount claimed.

Looking alone to the language of that judgment, there is ground for arguing that it was a judgment against respondent individually as well as against the community and C. P. Byam, though considering it in the light of the allegations of the complaint in that action, there is room for argument to the contrary. For argument's sake, we shall proceed upon the assumption that the land in question became subject to the satisfaction of that judgment, unless exempt therefrom because of respondent's declaration and claim of homestead. This will render it unnecessary for us to further notice the questions of the judgment being rendered against respondent individually and the land being her separate property, as to which contentions are made in appellants' behalf. Execution being issued upon that judgment, the land was sold in pursuance thereof by the sheriff of Mason county in August, 1913, and no redemption thereof being made, the sheriff executed his deed therefor in August, 1914, to appellant Dora W. Troutman, who was the purchaser at the sale.

The contention of appellants here to be considered is that respondent lost her homestead right in the land by abandonment, consisting of her and her husband's removal from the land and from the state of Washington and taking up their residence in the state of Oklahoma before its sale in pursuance of the execution. Touching the question of the residence of respondent and her husband, the trial court found, in substance, that they resided and made their home thereon intending to make that their home in the future, though they absented themselves therefrom and from the state for a period of nearly two years after the filing of the homestead declaration. It is insisted that the evidence calls for findings to the effect that respondent and her husband did abandon their residence upon the land and acquire a residence in the state of Oklahoma before its sale under the execution, from which it is argued that respondent thereby lost her homestead right and rendered the land subject to sale under the execution in

satisfaction of the judgment rendered in favor of appellant Albright.

A painstaking review of the evidence leads us to the conviction that, for a year or more prior to the filing of the homestead declaration by respondent, she and her husband had been, and were then, actually making their home upon the land, and that they then intended to continue their home thereon. It is true her husband had been away a considerable portion of that period, but his absence was caused by his business taking him to several different places in the middle western states and did not result in his acquiring a home in any other place. To this extent, at least, we agree with the findings of fact made by the trial court touching the question of their residence and home upon the land. It is plain that such residence complied with Rem. Code, § 552, which provides that "the homestead must be actually intended and used for a home for the claimants." This provision, as was held in *Wentworth v. McDonald*, 78 Wash. 546, 139 Pac. 503, has reference only to the qualifications of a claimant to assert his homestead right at the time of filing his homestead declaration, and not to the continuing of such right thereafter. We conclude, therefore, that respondent was then entitled to, and did, perfect her homestead right to the land by the filing of her declaration.

Now, whether or not the land thereafter ceased to remain exempt as a homestead because of the abandonment by respondent and her husband of their residence thereon by removal therefrom to another state, assuming for argument's sake such to be the fact, is quite another question. This question, we think, must also be answered in respondent's favor. We prefer, however, to rest this answer upon the provisions of the homestead statute limiting the manner of abandoning homesteads, rather than upon the somewhat unsatisfactory ground, in the light of the evidence, that respondent and her husband retained their residence upon the land, as found by the trial court. Proceeding upon the theory that respondent

and her husband became nonresidents of the state after the filing of the declaration, counsel for appellants invoke the general rule that a homestead right is abandoned and the property ceases to be exempt by the removal of the claimant therefrom, especially by removal from the state. Many decisions of the courts are called to our attention so holding. These decisions, however, deal with statutes making continued residence upon the homestead after its acquisition necessary to the continuing exemption right of the claimant, or with statutes which directly or by plain inference limit the continuance of all exemption rights of the claimant to the time of the claimant's residence within the state. None of them deal with the continuing exemption right of the claimant under a statute like ours, which not only prescribes an exclusive manner of selecting the homestead and evidencing such selection by public record, but also in express terms prescribes an exclusive manner of abandoning the homestead and the exemption right therein. Our present law defining and exempting the homestead is an act complete within itself. Laws of 1895, pp. 109-114 (Rem. Code, §§ 528-561) ; *Wentworth v. McDonald*, 78 Wash. 546, 139 Pac. 503. Touching the questions of the commencement and termination of the homestead right, we find in that act the following:

"A homestead can be abandoned *only* by a declaration of abandonment, or a grant thereof, executed and acknowledged, —(1) By the husband and wife if the claimant is married; . . ." Laws of 1895, p. 110, § 7; Rem. Code, § 535.

"A declaration of abandonment is effectual *only* from the time it is filed in the office in which the homestead was recorded." Laws 1895, p. 110, § 8; Rem. Code, § 536.

"From and after the time the declaration is filed for record the premises therein described constitute a homestead. If the selection was made by a married person from the community property, the land, on the death of either of the spouses, vests in the survivor, subject to no other liability than such as exists or has been created under the provisions of this act [chapter] ; in other cases, upon the death of the

person whose property was selected as a homestead, *it shall go to his heirs or devisees,* subject to the power of the superior court to assign the same for a limited period to the family of the decedent; *but in no case shall it be held liable for the debts of the owner, except as provided in this act [chapter].*" Laws 1895, p. 114, § 33; Rem. Code, § 561.

The words "act" in the original act are changed to "chapter" in Rem. Code and also in Rem. & Bal. Code. We have italicized the words of these provisions to which we direct particular attention. We have here prescribed not only an exclusive method by which a homestead may be abandoned without reference to the residence of the claimant, but also express provisions rendering it as completely exempt from debts of the homestead claimant after his death as before his death, though it pass to nonresident heirs or devisees. It would seem useless to argue, in the face of these plain provisions, that because, under certain circumstances, they thus give nonresidents the benefits of this exemption, the statute should be construed as being of no force when nonresidents are seeking its protection. Of course, the courts cannot consider such an argument when the statute is plain and free from ambiguity, as this one is. To so construe this statute would be reading into it that which we think cannot be found therein, either in terms or by implication.

Sections 7 and 8 of the act of 1895 (Rem. Code, §§ 535, 536), above quoted, are the same as, and seem to be borrowed from, the California statute, which was construed by the supreme court of that state long before their enactment in this state, in *Porter v. Chapman,* 65 Cal. 365, 4 Pac. 237. In that case, the claimants had mortgaged their homestead in California and moved to the territory of Arizona, the husband becoming a citizen and voter of that territory. Holding that the homestead exemption right acquired in California was not lost by such removal therefrom to the territory of Arizona, the court said:

"The homestead regularly declared to be such was not abandoned by the removal of the husband Porter from the

premises and residing with his family elsewhere in the state, or by his removal from the state to the territory of Arizona with his family when employed to go there by Clark, and remaining in such employment since April, 1877, becoming a citizen of the territory, voting in its elections, and offering himself as a candidate for office therein. It is found that when Porter and wife removed from their homestead, they did not intend to relinquish or abandon it, but intended to return thereto and make it their home, and that Mrs. Porter accompanied her husband to Arizona, because she believed it was her duty to do so, and with no intention to relinquish her residence in this state, understanding that her absence was only to be temporary, and during all the time she lived in the territory she claimed to be a resident of California, to have her homestead in Suisun, and intended to return thereto and occupy it as a home.

"The removal and residence above mentioned were not an abandonment. (See § 2, Act 1851, as amended in 1862; Stats. 1862, p. 519; and Civ. Code, §§ 1243, 1244.) Nor was it abandoned by the mortgage to Reeves by husband and wife, as security for money, and a reconveyance by Reeves to the husband, when the debt secured was paid Reeves by him. Under our law we know of no abandonment of the homestead except in the statutory mode. The homestead having once been regularly created out of a parcel of land, in accordance with the statute, the estate so created continues to exist until put an end to in the mode pointed out by the statute. The grounds of abandonment urged are not within those fixed and recognized by the statute. In our decisions in regard to homesteads, we are bound to follow the statutes on the subject. If hard cases should arise, a provision for avoiding them must be by an alteration of the law by the legislative department of the government. The courts are in this regard without power."

While the California court here recognized the intent of the claimants to return at some time to their homestead in California, that evidently was not viewed as controlling, as evidenced by the same court's decision in *Tipton v. Martin*, 71 Cal. 325, 12 Pac. 244, where there was presented a case of claimants removing from their homestead in California to the territory of Montana with the intention of permanently

residing there, and where they had taken initiatory steps looking to the acquisition of a United States government homestead, which, of course, required a claim of residence thereon in the territory of Montana. Justice McKee, speaking for the court, after noticing that homesteads which rest wholly upon occupancy after acquisition are abandoned by removal therefrom, said:

" 'A homestead,' says the code, which embodies the statutory provisions of the homestead laws of 1860 and 1862 upon the subject, 'can be abandoned *only* by a declaration of abandonment, or a grant thereof, executed and acknowledged by the husband and wife, if the claimants are married, or by the claimant if unmarried'; and the abandonment is effectual *only* from the time it is recorded. (Civ. Code, §§ 1243, 1244.) Abandonment of a homestead cannot be proved in any other way. As we have said, 'the homestead having once been regularly created out of a parcel of land, in accordance with the statute, the estate so created continues to exist until put an end to in the mode pointed out by the statute. . . . Under our law, we know of no abandonment of the homestead except in the statutory mode.' *(Porter v. Chapman,* 65 Cal. 365.)"

There has not come to our attention any statute like our own, except that of California. The statutes of all the other states apparently proceed upon the theory that the continuance of the homestead exemption right, after it is once established, depends upon continued residence thereon, or, in any event, upon continued residence within the state of such nature as to constitute constructive residence thereon.

Counsel for appellants argue that the holding of these California cases is not applicable here because we have in our exemption statutes the following provision in Rem. Code, § 571:

"Nothing in this *chapter* shall be construed to exempt from attachment or execution the property, *real* or personal *of nonresidents,* . . ."

We italicize the words to be particularly noticed. This provision, it is true, is found both in Rem. & Bal. Code and

in Rem. Code in the same chapter with the homestead pro-
visions of the act of 1895, above noticed.   However, refer-
ence to the history of this section, readily found from the ci-
tations thereunder in these compilations of our statutes, will
readily show that it constitutes no part of the homestead act
of 1895, but was enacted years before.   It was § 348 of
chapter 32 of the Code of 1881 relating to general exemp-
tions, including the exemptions of the homestead as therein
defined.   That was only a possessory homestead, the continu-
ing right to which depended upon continuing residence of
the claimant thereon.   That homestead law was superseded
by the present law of 1895, containing exemption provisions
as follows:

"The homestead is exempt from execution or forced sale,
except as in this act [chapter] provided."   Laws 1895, p.
109, § 4; Rem. Code, § 532.

The word "act" in the original act is changed to "chapter"
in Rem. Code and also in Rem. & Bal. Code.

"The homestead is subject to execution or forced sale in
satisfaction of judgments obtained: (1) On debts secured by
mechanic's, laborer's, materialmen's or vendor's liens upon
the premises.   (2)  On debts secured by mortgages on the
premises executed and acknowledged by the husband and wife
or by any unmarried claimant."   Laws 1895, p. 110, § 5;
Rem. Code, § 533.

These are the only exceptions to the exemption of the home-
stead prescribed by the act of 1895, and the judgment under
which this sale was made was not for any of the debts men-
tioned in those exceptions.   It is plain, then, that the words
"*chapter*" and "*nonresidents*," appearing in the above-quoted
portion of Rem. Code, § 571, do not have any reference to
the homestead as defined by the act of 1895, or the exemption
thereof as therein prescribed.

The decisions of this court in *Lewis v. Mauerman*, 35
Wash. 156, 76 Pac. 737, and *Wentworth v. McDonald*, 78
Wash. 546, 139 Pac. 503, lend support to the view that, un-

der the homestead act of 1895, the removal of a claimant from his homestead, even beyond the limits of the state, does not put an end to his exemption right therein.  Those cases, it is true, do not deal with the removal of claimants beyond the limits of the state, but they do settle the rule that continued residence upon the homestead after it has once been lawfully established is not necessary to the continuing exemption right of the claimant.  The only decision of this court which can be considered as at all lending support to the contrary view is that of *Gullickson v. Fenlon,* 48 Wash. 503, 93 Pac. 1074.  In that case it appeared that the claimants moved from their land away from the state, disposing of their personal property with intent to defraud their creditors, before they had filed any homestead declaration upon the land.  A judgment being rendered against them thereafter, jurisdiction having been acquired by attachment of the land, they returned to the land and filed a declaration claiming it as a homestead, with a view of defeating its sale in satisfaction of the judgment.  The court found that their return to the land was not in good faith with the intention of making a home thereon, but merely a subterfuge to defeat its sale in satisfaction of the judgment.  That, manifestly, was not a case involving an abandonment of a homestead right after it had once been lawfully established, but one involving the claimants' right to acquire a homestead when they were not intending to use the land for a home as required by Rem. Code, § 552.  The question was not one of abandonment, but of the acquisition of a homestead.  It is true that the provision of Rem. Code, § 571, above quoted, was noticed by the court in that case, it being there referred to as Bal. Code, § 5254, and apparently assumed to be a part of the homestead act of 1895.  This assumption, as we have seen, was manifestly erroneous.  However, a consideration of that section was not necessary to the determination of the rights of the parties in that case, in view of the finding that the claimants were not going upon the land in good faith with the in-

tention of making it their home. Manifestly it never became a lawfully established homestead. We think that decision is not controlling here.

Counsel for appellants invoke the provision of Rem. Code, § 564, reading as follows:

"No property shall be exempt from execution for . . . actual necessaries, not exceeding fifty dollars in value or amount furnished to the defendant or his family within sixty days preceding the beginning of an action to recover therefor, . . ."

Here, again, we have a provision which was enacted apart from the homestead law of 1895. But since it was enacted after this homestead law (Laws of 1897, p. 93; Laws of 1903, p. 135), we shall assume, without deciding, that it constitutes an exception to the homestead exemption as well as others. It appears in this case that the sum of $32.79 of the $645 recovered in the judgment in favor of appellant Albright under which the sale of the homestead was made, was the purchase price of goods which might be considered as actual necessaries sold less than sixty days preceding the commencement of that action. It is argued that, to this extent, in any event, the judgment was such as to render the homestead subject to its satisfaction. It was not alleged in the complaint in that action that these goods were necessaries, and the judgment is silent on the question. Evidently the case was not brought or prosecuted upon that theory; besides, the sale was made to satisfy the whole judgment, which in amount was many times more than the purchase price of these alleged necessaries. It seems plain to us that, whatever appellants' right may be touching the purchase price of these alleged necessaries as against respondent's homestead, it cannot be said that such rights have the effect of validating the execution sale here in question.

It is thoroughly settled by our decisions that a sale under execution of an exempted homestead, as we have seen this sale was, is not only voidable but absolutely void, and that

the confirmation by the court of a void sale does not render it valid. *Asher v. Sekofsky*, 10 Wash. 379, 38 Pac. 1133; *Harding v. Atlantic Trust Co.*, 26 Wash. 536, 67 Pac. 222; *Whitworth v. McKee*, 32 Wash. 83, 72 Pac. 1046; *Vietzen v. Otis*, 46 Wash. 402, 90 Pac. 264; *McLiesh v. Ball*, 58 Wash. 690, 109 Pac. 209, 137 Am. St. 1087.

We conclude that the judgment of the trial court must be affirmed. It is so ordered.

MORRIS, C. J., MAIN, CHADWICK, and ELLIS, JJ., concur.