[No. 23414.  Department Two.  November 20, 1931.]

JOHN A. NELSEN *et al., Respondents,* v. HAZEL L. McKEEN *et al., Appellants.*[1]

*L. B. Schwellenbach* and *Patrick M. Tammany,* for appellants.

*Attwood A. Kirby,* for respondents.

HOLCOMB, J.—This action was begun in the court below to quiet title to a ten acre tract of farm land near Kent, King county, Washington, claimed under

[1]Reported in 5 P. (2d) 333.

homestead exemption as against a judgment execution and sheriff's certificate of sale held by appellants, issued after execution under a civil judgment in another case wherein appellants were judgment creditors and respondents judgment debtors. Appeal is taken from a judgment for respondents establishing the validity and good faith of their homestead declaration, setting aside the certificate of purchase issued to appellants by the sheriff of King county, and quieting title in respondents.

The facts as presented on behalf of respondents in the trial court, upon which it made findings in their favor, are substantially these:

In March, 1926, respondent John A. Nelsen purchased the tract of land in suit under an executory contract, in which was reserved the west thirty feet as a part of the thirty-foot private roadway for ingress and egress to the Nelsen tract and to the adjacent property owned by appellants' decedent. On February 4, 1927, respondent John A. Nelsen received a deed of the property in question from his grantor.

In June, 1927, Nelsen married respondent Carla Nelsen, and he and his wife immediately began to live upon, improve the land, and use it as a homestead. After their marriage, Carla Nelsen paid off a mortgage of seven hundred dollars which had been given as part of the purchase price of the land, with money saved from wages she had earned prior to marriage. After their marriage, at different times Carla Nelsen did domestic service in the nearby city of Seattle to earn money with which to aid in clearing and otherwise improving the land; while John Nelsen remained at home, cleared off the stumps, cultivated and otherwise improved the land. Each weekend during this time Carla Nelsen would return to the home with her weekly wages for her husband. Eventually, the land

was entirely cleared and all in cultivation, upon which Carla Nelsen stayed home with her husband, and they earned their living by raising chickens, marketing the eggs, and in the growing of hay and garden stuff.

There had been hard feelings for some time between appellants' decedent and respondent John Nelsen over the right of Nelsen to use the private roadway which had been reserved, culminating in a fight on June 1, 1929. Twelve days thereafter, McKeen died from a cerebral hemorrhage as a result of injuries received. Nelsen was thereupon charged with murder, arrested and taken to jail, where he remained until neighbors of his procured his release upon their personal bail. On September 12, 1929, Nelsen was convicted of manslaughter and sentenced to a term of imprisonment in the penitentiary. Notice of appeal was given, and he was again released on bail on October 26, 1929. Later, the appeal was abandoned and Nelsen was committed to the penitentiary at Walla Walla on December 6, 1929, and commenced to serve his term of imprisonment on December 7, 1929.

During the time John Nelsen was in jail, Carla Nelsen stayed on the homestead, cared for things and helped harvest the hay. For a time just after her husband's arrest she was a guest at the home of friends, but returned each day to care for things on the homestead. Each time John Nelsen was released on bail, he immediately returned to his homestead and with his wife there lived, worked and gathered their harvest. John Nelsen lived on the homestead, with the above exceptions, up to the time he left for Walla Walla. Carla Nelsen lived and worked upon the premises during the entire period from her marriage to the date her husband went to the penitentiary, except when working out as above mentioned. She has kept her household goods, furniture and personal belong-

ings at the homestead, and has gone out every week or so, on her day off, to take care of the place.

On July 17, 1927, while she was living upon and harvesting the crop from this land, Carla Nelsen, through her then attorney, filed a declaration of homestead upon the land. On October 18, 1929, John Nelsen consulted with his present counsel, and out of an abundance of caution filed a declaration of homestead impressing the homestead upon the "separate property interest" of John Nelsen. Thereafter counsel, being solicitous over the correctness of that form, caused Nelsen on November 29, 1929, to file an amended declaration of homestead, simply describing the lands in the usual form without specifying any separate property interest.

Both of respondents testified that, at the time of filing their separate homestead declarations, it was their intention to keep the property for their home and to live thereon, which had always been their intention from the date of purchase.

On December 18, 1929, judgment was entered on behalf of appellants against John A. Nelsen and the marital community of the Nelsens in a civil action for loss by the death of her husband, under which judgment execution was sued out and respondents' homestead sold on general execution under this judgment.

As to the value of the homestead, John Nelsen testified that it was hard to estimate the cash value, that maybe two or three thousand dollars would be all he could get in cash, but that to him it was worth about four thousand dollars.

In their answer in the court below, appellants filed an alternative petition, following the procedure outlined in Rem. Comp. Stat., §§ 537-538, for the sale of homesteads, to the effect that the trial court should appoint three freeholders to appraise the value of the

homestead if the proof showed the value thereof to exceed the homestead exemption of two thousand dollars.

Appellants present their several claims of error under three groups: (1) Respondents never acquired a valid homestead; (2) respondents should have been required to elect as to which homestead declaration they relied upon; and (3) it being alleged and admitted that the value of the property was twice the homestead exemption, respondents were not entitled to an order of appraisal.

Under their first contention, appellants positively declare that their position was and is that the question involved herein is the good faith intention of respondents at the time they claimed the property as a homestead, and that their theory is not predicated on abandonment of the homestead.

Appellants first quote Rem. Comp. Stat., § 552:

"Homesteads may be selected and claimed in lands and tenements with the improvements thereon, not exceeding in value the sum of two thousand dollars. The premises thus included in the homestead must be actually intended and used for a home for the claimants, and shall not be devoted exclusively to any other purposes."

and Id., § 561:

"From and after the time the declaration is filed for record the premises therein described constitute a homestead . . ."

The following sections of the statute, cited and quoted by respondents, also have a bearing upon the matter:

"The homestead consists of the dwelling-house, in which the claimant resides, and the land on which the same is situated, selected at any time before rendition of judgment, as in this act provided." Rem. 1927 Sup., § 528.

"If the claimant be married the homestead may be selected from the community property, or the separate property of the husband, . . ." Rem. Comp. Stat., § 530.

"In order to select a homestead the husband or other head of a family, or in case the husband has not made such selection, the wife must execute and acknowledge, . . . a declaration of homestead, and file the same for record." Id., § 558.

Section 535, Rem. Comp. Stat., provides that a homestead can be abandoned only by a declaration of abandonment, or a grant thereof, executed and acknowledged by the husband and wife if the claimant is married.

After reading the evidence, it is manifest that there can be no question but that respondents both intended to and did establish their home upon this land. Whether they filed three, or *four* declarations of homestead, as asserted by appellants, is of no consequence. Both of them filed declarations of homestead upon this land and lived upon this land and nowhere else.

The fact that John Nelsen cannot live there, but is in involuntary confinement in the penitentiary, is of no consequence either. As a general rule of law, persons under legal disability or restraint are incapable of losing or gaining a residence by acts performed by them under the control of others. A person imprisoned under operation of law does not thereby change his residence. *Millett v. Pearson,* 143 Minn. 187, 173 N. W. 411, 5 A. L. R. 256. See, also, annotations beginning page 259. John Nelsen was therefore eligible to declare a homestead in the land.

Since abandonment is not relied upon by appellants, and assuming that John Nelsen had become ineligible as a householder to do so, Carla Nelsen herself having filed a valid declaration of homestead as she had a legal right to do under § 530, *supra,* it is of

no concern to appellants what has become of John Nelsen or what his intention was. It is evident that Carla Nelsen lives upon the premises declared as a homestead as continuously as her circumstances permit. *Byam v. Albright,* 94 Wash. 108, 162 Pac. 10; *Brown v. Manos,* 140 Wash. 525, 250 Pac. 36. There has been no abandonment of the homestead by declaration on her part as required by § 535, *supra.* Cases cited by appellants by this court where no actual occupancy was made, or where it was obviously colorable and by means of a mere subterfuge, are inapt.

■ It is clear, under the facts heretofore stated, that respondents and their attorneys were uncertain whether a valid declaration of homestead had been filed by either one of them until the last one filed by John Nelsen. The several declarations were filed with but the one intent: to declare a homestead in the land in question. Each 'and all were confirmatory thereof. Since our homestead laws are to be liberally construed, it would have been error on the part of the trial court to require an election as to which of the declarations of homestead respondents relied upon.

■ Rem. Comp. Stat., § 559, requires the declaration of a homestead to contain, among other things, "an estimate of their actual cash value." The action taken by the trial judge, based upon the alternative petition of appellants, is in conformity with §§ 537 and 538, *supra,* which prescribe that, upon the hearing of such matters as this, if the proof shows the value of the homestead to exceed the amount of the homestead exemptions, the judge may appoint three freeholders to appraise the value of the homestead.

Although appellants allege that the value of the homestead was four thousand dollars, and respondents admitted it, that was an estimate, which is not conclusive. Under such circumstances, it is the duty of

the trial judge to appoint the three freeholders to appraise its value. Under Rem. Comp. Stat., § 543, they must view the premises and appraise the value thereof, and if the appraised value exceeds the homestead exemption, they must determine whether the land claimed can be divided without material injury.

There was therefore no error in appointing the appraisers as petitioned by appellants.

We find no error in the record, and the judgment is affirmed.

TOLMAN, C. J., BEALS, MAIN, and MILLARD, JJ., concur.