[No. 27167.   Department One.   April 14, 1939.]

*In the Matter of the Estate of* DELLA FINCH, *Deceased.*

CLARK E. FINCH, *Respondent,* v. ETHEL WIREN,
*as Executrix, Appellant.*[1]

*Ballinger, Clark, Mathewson & Force,* for appellant.
*Barker & Day,* for respondent.

JEFFERS, J.—Clark E. Finch, surviving husband of Della Finch, deceased, filed a petition in the superior

[1]Reported in 89 P. (2d) 218.

court for King county, in the cause wherein his wife's estate was being probated, asking that certain property be stricken from the inventory and that certain property be set over to him as a homestead. Ethel Wiren, executrix of the estate of Della Finch, deceased, answered the petition, and thereafter the matter was heard by the court, which entered findings of fact, conclusions of law, and a decree, wherein Clark E. Finch was granted the relief prayed for. Ethel Wiren, as executrix, has appealed from the decree, entered March 5, 1938.

Appellant claims the court erred in entering its findings of fact; in entering its conclusions of law; in entering its decree sustaining and awarding a homestead and striking property from the inventory; in denying appellant recovery on her cross-complaint; and in denying appellant's motion for a new trial.

The facts, in so far as the question involved is concerned, may be stated as follows: Respondent, since about 1920, has been a chef on the Chicago, Milwaukee railroad, on the run between Chicago and Tacoma. While in Chicago, he had a room, where he kept a few of his clothes; and while in Tacoma, he sometimes stayed at quarters furnished by the railroad. He received from $145 to $200 per month. Beginning about 1921, respondent opened an account with Corn Exchange National Bank of Chicago, and continued to make deposits in that bank and its successor until March 13, 1929, at which time he had on deposit $2,750.

On March 23, 1929, respondent purchased the property in question from H. M. Lundstrom, for a consideration of $5,000. He drew $2,200 from his account to pay on the purchase price, which, together with the sum of $300 paid as earnest money, made an initial payment of $2,500. The property was purchased subject to a mortgage of $2,500. Respondent continued to have an

account in the Chicago bank until about 1933, and had a substantial balance therein.

Respondent and Della Finch were married in December, 1929, and respondent spent about one thousand dollars from his own funds in furnishing the home. From the time of their marriage up to the time of Della Finch's death on February 3, 1937, respondent and his wife resided in the property purchased by him. After respondent's marriage, he had all his mail delivered to his Seattle address, and registered and voted there. On March 27, 1937, respondent executed a declaration of homestead on the property in question, which was filed for record March 29, 1937.

Della Finch died testate February 3, 1937, nominating appellant, her niece, as executrix of her will, which was admitted to probate on February 4th. By the terms of the will, the community interest of decedent in the property in question was bequeathed to appellant, and the property was subsequently inventoried and appraised as part of the estate of Della Finch. On October 18, 1937, respondent filed in the estate a petition to strike the property from the inventory and to have it awarded to him as a homestead.

After appellant was appointed executrix, she took possession of the property and removed the furniture therefrom and stored it. Respondent attempted, on several occasions after his wife's death, to gain possession of the property, but was prevented by appellant from so doing, and the place was finally rented by appellant for thirty dollars per month, which, the testimony shows, was a reasonable rental. There is some testimony to the effect that respondent said he was not going to live in the property, that he wanted to sell it, and that he listed it for sale with the Johnson Real Estate Company, February 26, 1937, but it also appears that respondent never turned the keys of the place

over to the company, and nothing further was done in regard to such listing. There is testimony to the effect that respondent told appellant she could remove the furniture, but this is denied.

It also appears that, prior to Mrs. Finch's death, appellant examined a safe deposit box of Mr. and Mrs. Finch, and that in the box at that time there was a bank book showing a balance of $2,700. With appellant at the time she claimed she saw the bank book, were Mr. Galer, who was in attendance at the vault, and a Mrs. Simpson. Mr. Galer had no recollection of the bank book, although he made up the inventory of the contents of the box. Mrs. Simpson did not see inside the book, but testified that appellant looked surprised when she looked in this book. Neither appellant nor the other witnesses knew the name of the bank from which the book came, or whose bank book it was, and no such book was produced in court. February 16, 1937, appellant, with her attorney, opened the safe deposit box and found no bank book therein.

There is testimony to the effect that about $462 was paid on the mortgage after the marriage of respondent.

It is first contended that respondent did not file or acquire a valid homestead. The declaration, as filed, in so far as material here, was as follows:

"DECLARATION OF HOMESTEAD

"KNOW ALL MEN BY THESE PRESENTS:

"That I, CLARK E. FINCH, do hereby certify and declare as follows, to-wit:

"1—That I am a widower, to-wit, the surviving husband of Della Finch, deceased, still residing upon the premises hereinafter described, said premises having been continuously occupied by said Della Finch and me as a home during our marriage.

"2—That I am now residing on said premises hereinafter described, consisting of land and dwelling house thereon.

"3—That I claim the said premises hereinafter described as a homestead.

"4—That I estimate the actual cash value of said premises hereinafter described to be the sum of Three Thousand Five Hundred Dollars ($3,500); that the same are subject to a mortgage of approximately the sum of One Thousand Eight Hundred Dollars ($1,800), leaving a net estimated actual cash value of the sum of One Thousand Seven Hundred Dollars ($1,700)."

Paragraph 5 contains a description of the property.

It is contended by appellant that the declaration is deficient, in that it does not state that appellant intends to reside on the premises. Rem. Rev. Stat., § 552 [P. C. § 7883], provides:

"Homesteads may be selected and claimed in lands and tenements with the improvements thereon, not exceeding in value the sum of two thousand dollars. The premises thus included in the homestead must be actually intended and used for a home for the claimants, and shall not be devoted exclusively to any other purposes."

Section 559 [P. C. § 7890] provides:

"The declaration of homestead must contain,—

"1. A statement showing that the person making it is the head of a family; or when the declaration is made by the wife, showing that her husband has not made such declaration, and that she therefore makes the declaration for their joint benefit;

"2. A statement that the person making it is residing on the premises *or* has purchased the same for a homestead and intends to reside thereon and claims them as a homestead;   .   .   ."

We think subd. 2, *supra,* presents two possible situations—one where it is set forth in the declaration that the person making it "is residing on the premises;" the other, that he "has purchased the same for a homestead and intends to reside thereon." In so far as the declaration is concerned, either statement is sufficient.

The declaration herein contains the statement that respondent was residing on the premises and claimed it as a homestead; it was therefore not necessary to also state that he *intended to reside thereon.* See *Traverso v. Cerini,* 146 Wash. 273, 263 Pac. 184.

Appellant also claims that respondent failed to establish that he actually intended to use the premises as a home, as required by Rem. Rev. Stat., § 552. Conceding that no homestead was created until respondent's declaration was filed, and that prior residence upon the premises lends no support to the claim, still we think there was ample testimony to support the finding of the trial court that the declaration was filed in good faith. It is claimed he was not living on the property at the time his declaration was filed, but the testimony shows that, after his wife's death, he was excluded from the premises by appellant and was unable to occupy it, as he and his wife had done since their marriage in 1929. There is no testimony that at any time respondent claimed a residence other than on the premises in question, where all his mail came, and where his voting residence was. It is true his work took him away from home a great deal, but this could in no way affect his rights herein.

There was some testimony to the effect that respondent had stated that he was not going to live on the premises, and that he had listed the property for sale. We think the evidence failed to establish that the declaration was made in bad faith, in that respondent had no intention of actually using the premises as a home. *Wentworth v. McDonald,* 78 Wash. 546, 139 Pac. 503; *Byam v. Albright,* 94 Wash. 108, 162 Pac. 10; *Moe v. Becher,* 146 Wash. 128, 262 Pac. 144; *Nelsen v. McKeen,* 165 Wash. 274, 5 P. (2d) 333.

Appellant cites *Scott v. Guiberson,* 72 Wash. 36, 129 Pac. 886; *Schoenheider v. Tuengel,* 96 Wash. 103, 164

Pac. 748; *Canadian Bank of Commerce v. Kellough,* 142 Wash. 335, 253 Pac. 124; *Traverso v. Cerini,* 146 Wash. 273, 263 Pac. 184; *In re Leupp's Estate,* 153 Wash. 218, 279 Pac. 579. In the cases of *Traverso v. Cerini, Scott v. Guiberson,* and *In re Leupp's Estate, supra,* the respective claimants never resided on the premises in which the homestead was claimed and failed thereafter to establish a *bona fide* residence. In the cases of *Canadian Bank of Commerce v. Kellough* and *Schoenheider v. Tuengel, supra,* the court held the claimants had not filed their declarations in good faith. The cases are therefore distinguishable on the facts from the instant case.

It is next contended that, after the marriage of respondent and Della Finch, $775 was paid from community funds on the mortgage on the property, that an equitable lien for that amount was created, and that the estate of Della Finch is entitled to administer upon such lien acquired by the community in the property.

The court found, and there is ample testimony to support the finding, that respondent, with his separate funds, acquired the property in question, in March, 1929. It also appears that respondent and Della Finch were not married until December, 1929. It is thus apparent that, under the law of this state, the status of the property became fixed as the separate property of respondent, as of the date of purchase. *In re Woodburn's Estate,* 190 Wash. 141, 66 P. (2d) 1138. The evidence shows that respondent had, at the time of his marriage to Della Finch, a separate bank account, in which there was a substantial balance, and that this account existed for several years after the marriage. There is no testimony herein indicating whether the payments made after respondent's marriage were paid from separate or community funds. We stated in

*Guye v. Guye,* 63 Wash. 340, 115 Pac. 731, 37 L. R. A. (N. S.) 186:

"The appellant calls attention to the fact that, during the forty years of her married life with Francis M. Guye, large sums were paid in taxes on this separate property, and she asks the court to presume that the money with which they were paid was community funds, and to charge the land with one-half thereof for her benefit. But we cannot presume that the funds used to pay the taxes were community funds. What would have been the rule had it been shown that the husband had no separate income with which to pay these taxes, we do not need to discuss; but where, as here, it is shown that he did have such separate income, there can be no presumption that he used community funds for the purpose of paying his separate debts. The presumption is always in favor of honesty and fair dealing, rather than to the contrary. Moreover, the right of the spouses in their separate property is as sacred as is the right in their community property, and when it is once made to appear that property was once of a separate character, it will be presumed that it maintains that character until some direct and positive evidence to the contrary is made to appear.

"Nor do we think the fact that the spouses have joined in mortgaging property sufficient evidence on which to found a claim that the property mortgaged is community property."

In the instant case, the testimony shows that respondent and his deceased wife had executed an extension agreement of the mortgage. It also appears that the property had not increased in value, but that, at the time it was appraised in the Della Finch estate, was less valuable than at the time it was purchased.

Appellant cites the following cases as sustaining her contention: *In re Carmack's Estate,* 133 Wash. 374, 233 Pac. 942; *Rawleigh Co. v. McLeod,* 151 Wash. 221, 275 Pac. 700, 64 A. L. R. 238; and *In re Gulstine's Estate,*

166 Wash. 325, 6 P. (2d) 628. In the *Carmack* case, *supra,* it clearly appeared that the wife owned the bare, unimproved real estate, and all the improvements placed thereon were paid for by the community, the value of the improvements being easily ascertainable. The *Rawleigh Co.* case, *supra,* did not pass on the question of an equitable lien in the property involved, but held that the title to the property, when taken, vested in the judgment debtor as his separate estate, and since there had been no conveyance by him, or by operation of law, the title still remained in the judgment debtor. The *Gulstine* case, which involved the separate funds of Mr. Gulstine, brought from South Dakota to the state of Washington, and thereafter invested by him in this state, is also distinguishable on the facts.

It is next contended that the court erred in denying appellant recovery on her cross-complaint. Appellant alleged, and attempted to establish, that, at the time of the death of Della Finch, there was a savings account, totaling $2,700, on deposit in the name of respondent, which consisted of community funds of Della Finch and respondent. The only direct testimony touching this matter was that of appellant. She testified that, prior to the death of Mrs. Finch, while inspecting the safe deposit box of Mrs. Finch and respondent, she saw a bank book, which showed a deposit balance of $2,700. Appellant did not remember the name of the bank from which the book came, or the name of the person by whom the deposit was made; nor does it appear whether the bank book indicated it was a savings or checking account. Mr. Galer, who was in charge of the vault, and who made an inventory of the contents of the box, did not remember the book. Mrs. Simpson, who was also there, did not see what was in the book, but testified she saw appellant look at a bank book. No such book was produced at the trial.

The records of the vault show that respondent visited the vault after the time appellant claimed to have seen the book. Respondent denied that he took any book showing an active account. There was no other testimony that there was such an account. Clearly, the trial court was right in denying appellant recovery on her cross-complaint.

We think the findings of the trial court were well supported by the evidence, and that a proper judgment was entered thereon.

The judgment is affirmed.

BLAKE, C. J., STEINERT, MAIN, and ROBINSON, JJ., concur.