## WASSELL *v.* TUNNAH.

| 25 | 101 |
| 188 | 473 |

Where the terms of a statute are ambiguous, the court, in order to ascertain their meaning, must resort to the general spirit and intent of the enactment, keeping in view its known object and the mischief intended to be remedied.

In view of the enlightened public policy which dictated the homestead act, and its obvious intent, the phraseology "one town or city lot" must be understood as the lot or piece of ground on which the head of a family has a house, with the appurtenances, which he uses as a home, no matter whether it contains more or less than one lot, according to the plat and survey of the town or city.

*Appeal from Pulaski Circuit Court.*

Hon. LIBERTY BARTLETT, Circuit Judge.

FARR & VAUGHAN, for appellant.

GALLAGHER & NEWTON, for appellee.

COMPTON, J.

The facts necessary to an understanding of the question involved may be briefly stated, as follows: Wassell recovered judgment against Tunnah, in the Pulaski circuit court, for the sum of one hundred and fifty dollars, besides costs of suit. Upon the judgment, so recovered, execution was issued to the sheriff and levied on lots 10 and 11, in block numbered 100, in the city of Little Rock, as the property of Tunnah, who, being the head of a family, resided on, used, and claimed the same as his homestead. The two lots or subdivisions constituted but one inclosure, within which, and partly on both subdivisions, was the dwelling house, with the necessary appendages, consisting of out-buildings, &c. Pursuant to the process in his hands, the sheriff advertised the premises for sale, when, on application of Tunnah, the circuit court quashed the execution and levy; from which decision Wassell appealed.

It is conceded, in argument, that one of the city lots, embraced within the inclosure of the appellee, was exempt from sale under execution; but it is insisted that, upon a fair construction of the homestead act, both were not. The act provides that "every free white citizen of this State, male or female, being a householder, or the head of a family, shall be entitled to a homestead, exempt from sale or execution, * * not exceeding one hundred and sixty acres of land, or one town or city lot, being the residence of such householder or head of a family, with the appurtenances and improvements thereunto belonging." And, in a subsequent section, it is further provided "that nothing contained in this act shall be so construed as to exempt from execution and sale any town lot, with any improvements thereon, except such as constitute the actual family residence, and such buildings as are necessary ap-

pendages thereto." *Gould's Dig.*, *ch. 68, secs. 29–31.* Does the phraseology, "one town or city lot," used in the act, mean a lot, according to the plat and survey of the town or city, or are we to understand it in a more comprehensive sense, as meaning the lot, or piece of ground, in a town or city, on which the head of a family has his dwelling house, with the appurtenances, no matter whether it contains more or less than one of such lots? In this respect the terms of the statute are ambiguous, and, consequently, we must resort, in order to ascertain their meaning, to the general spirit and intent of the enactment, keeping in view its known object, and the mischief intended to be remedied.

It was an enlightened public policy, looking to the general welfare as well as to that of the individual citizen, which dictated the passage of the homestead act; and the obvious intent of the act is to secure to *every* householder, or head of a family, a *home*, a *place of residence*, which he may improve and make comfortable, and where the family may be sheltered, and live beyond the reach of those financial misfortunes which even the most prudent and sagacious can not always avoid; and the better to effectuate this intent, and thereby promote the prosperity of the State, as well as the independence of the citizen, no limitation as to value is fixed upon the homestead. The splendid mansion and the humblest cabin stand upon the same legal footing—each is the *home* of the citizen, as he has it, and as such the law protects it. The act, then, being remedial, and such being its spirit and intent, the narrow and literal construction contended for by the counsel for the appellant can not be adopted consistently with the established rules of law applicable in such cases. The Legislature must have known that many persons had erected buildings in towns and cities without regard to the lots indicated by the survey of the particular town or city; and where the dwelling house was on one lot, and the necessary out-buildings on another—or where, as not unfrequently happens, the dwelling itself stood on the line between the two lots, and was partly on both—can it be sup-

posed that it was the intention of the Legislature to practically deny the occupant the benefit of the act, or to extend it in such way as to make it necessary, in order to protect the homestead, that he should pull down and rebuild his houses—to say nothing of appurtenances that could not be removed—so as to get them all on one of such lots? Certainly not. A construction which results in a discrimination so unjust, so obviously at war with what we have seen to be the general spirit and object of the act, and for which no good reason can be assigned, should not be adopted. This court, in *McKenzie v. Murphy, 24 Ark., 155,* decided that an alien domiciled in this State, being a house-holder, or head of a family, was entitled to the exemption of his homestead from sale on execution, because, according to the intent of the act, the word "citizen" meant an inhabitant, a resident, as contradistinguished from the word "citizen," when used as implying political or civil privileges. And, in the case now before us, we are clearly of opinion that the phraseology, "one town or city lot," must be understood within the meaning of the homestead act, as the lot or piece of ground, in a town or city, on which the head of a family has a house, with the appurtenances, which he uses as a *home,* no matter whether it contains more or less than one lot, according to the plat and survey of the town or city.

It is not deemed necessary to notice the act amendatory of the homestead act, approved 11th of March, 1867, further than to remark that, as to the matter in question, it provides precisely what we have construed the act to mean without the amendment.

Finding no error in the record, the judgment of the court below must be, in all things, affirmed with costs.