[No. 13683.　Department Two.　May 2, 1917.]

FRANZ SCHOENHEIDER, *Appellant*, v. MARTHA DEHNE TUENGEL, *formerly Martha Dehne, Respondent*,[1]

HOMESTEADS—RESIDENCE—EVIDENCE — SUFFICIENCY.　Under Rem. Code, § 552, a homestead must be actually intended and used as a home; and the evidence is insufficient to support a claim of homestead by a widower, as head of a family consisting of a minor son and adult dependent daughter, where it appears that he built a small shack upon unimproved land after judgment recovered against him, and for two years spent but very brief periods on the land with his daughter, who was able to support herself, and that his son, who was twenty years of age, had never been upon the land and had no intention of living there.

Appeal from a judgment of the superior court for Snohomish county, Bell, J., entered April 6, 1916, dismissing an action for equitable relief, tried to the court. Affirmed.

*Cooley, Horan & Mulvihill*, for appellant.

*E. W. Klein, Coleman & Fogarty*, and *Q. A. Kaune*, for respondent.

WEBSTER, J.—Appellant filed a declaration of homestead on a tract of land situated in Snohomish county, and subsequently brought this action to quiet his title thereto and to enjoin respondent from levying upon and selling the land under execution. Appellant, who was a widower, claimed to be the head of a family under subdivisions 2 and 6 of Rem.

[1]Reported in 164 Pac. 748.

Code, § 553, alleging that he had residing with him on the premises a minor son, and an adult daughter who was unable to care for or support herself. Respondent denied that appellant was the head of a family, that he and his family were residing on the premises at the time the declaration of homestead was filed, and that appellant intended to actually occupy the land as a home. The cause was tried upon its merits, resulting in a judgment denying the relief prayed and dismissing the action.

The salient facts are these: Respondent, with his daughter and son, resided in the city of Snohomish for about ten years prior to the summer of 1912, at which time he dismissed his housekeeper, stored his household goods, and sent the children to the home of their married sisters, who resided near the city of Chicago. Immediately thereafter, appellant spent most of his time in California, visiting in Germany, and living with his daughters in the east. On July 9, 1914, respondent recovered a judgment against appellant in the superior court for Snohomish county. In August, 1914, appellant went upon the premises in question, consisting of about forty acres of raw, unimproved land, and built a small house or shack thereon. The building was fourteen feet wide, twenty-eight feet long, and was constructed out of plain boards, was not plastered, and had but one outside door. Upon the completion of the house, appellant took a few articles of furniture and some household goods to the place, and in the latter part of August, he and his daughter went to live upon the land, claiming it as their home. On September 2, 1914, he filed a declaration of homestead in the office of the auditor for Snohomish county. At the time of the trial, which occurred on February 21, 1916, no clearing or improving of any kind had been done on the land. There were no outbuildings on the place, and no poultry, horses, or stock of any kind had ever been kept on the premises by appellant. About the first of December, 1914, appellant and his daughter went east, ostensibly on a visit, and remained there until March, 1915.

In May, 1915, they again went east and did not return until August, 1915. On October 22, 1915, this action was commenced. In November, 1915, they again left for the east, and did not return to Snohomish county until January 30, 1916, about three weeks prior to the trial.

It is undisputed that, during the time appellant and his daughter were in Snohomish county after the declaration of homestead was filed, they kept trunks and wearing apparel at the home of an intimate friend who lived in the city of Snohomish. During the whole of this time they would go into the city on Friday or Saturday each week and stay at the home of their friend over Sunday, usually returning to the country on Monday or Tuesday, though sometimes not until later in the week. While visiting at the home of his friend, appellant contributed to some extent to the payment of the household expenses. The minor son, at the time of the trial, was over twenty years of age, and has since attained his majority. He did not attend the trial, and had not been in the state of Washington since the summer of 1912. After finishing the grade school in Snohomish, he continued his studies in Portland for two years. He then went to Milwaukee and attended college, and later went to Chicago, and was taking a course in a business college in that city at the time of the trial. He is possessed in his own right of an estate valued at about six thousand dollars. He has never lived on the lands claimed as a homestead, and there is no evidence in the record indicating that he ever intended to do so. The clear inference is entirely to the contrary. Indeed, the record is silent as to whether it was his intention to return to the state of Washington after finishing his education. The trial court found that the adult daughter was able to care for and support herself and was not dependent upon her father. This finding is supported by the clear preponderance of the evidence. The judgment below was based upon the thought that the son had never actually resided on the premises with his father, and that mere constructive residence growing out of the principle that the

domicile of the father is the domicile of his minor child is not
sufficient to satisfy the provisions of the homestead statute.

As we view the record, it will not be necessary to enter upon
a consideration of this very interesting question. Rem. Code,
§ 552, provides that the premises included in the homestead
must be actually intended and used as a home for the claim-
ant. The facts to which we have referred, in the light of the
details gathered from careful examination of the record, con-
vince us that appellant never intended in good faith to occupy
the land as a home for himself and his son. His pretended
residence was merely colorable, and the filing of the declara-
tion of homestead was not for the purpose of establishing and
maintaining a home, but was solely for the purpose of defeat-
ing his creditors.

"If the intention of the debtor when he occupies land as a
homestead is not only to make it his present home, but also to
prevent creditors from collecting their debts by subjecting
the property thereto, the exemption may nevertheless be se-
cured; but in the absence of good faith upon the debtor's part
in respect to occupancy of the property no homestead can be
obtained by him." 21 Cyc. 471.

"It was an enlightened public policy, looking to the gen-
eral welfare as well as to that of the individual citizen, which
dictated the passage of the homestead act; and the obvious
intent of the act is to secure to *every* householder, or head of
a family, a *home*, a *place of residence*, which he may improve
and make comfortable, and where the family may be sheltered,
and live beyond the reach of those financial misfortunes which
even the most prudent and sagacious cannot always avoid."
*Wassell v. Tunnah*, 25 Ark. 101.

The idea of *home* is the very foundation rock upon which
all homestead laws are based, and unless it is the honest in-
tention of the declarant to actually occupy the premises as a
home, he is not within the protection of the statute. We are
not unmindful of the rule that statutes of this character are
not in derogation of the common law, but are to be liberally
construed to the end that the wise and benevolent policy which
prompted their enactment may be carried into effect. At the

same time, it is equally the duty of the courts not to permit these humane laws to be prostituted and perverted to the purpose of enabling an unscrupulous debtor to avoid the payment of his honest obligations by resorting to their provisions as a mere subterfuge with no honest intention or purpose of occupying the land as a home.   Especially is this true in this state, where a homestead once acquired is not lost by failure to occupy it, but can only be abandoned by a formal declaration to that effect.   Affirmed.

ELLIS, C. J., MORRIS, MAIN, and CHADWICK, JJ., concur.