[No. 31431.    Department One.    January 12, 1951.]

EVELYN D. CLARK, *Appellant,* v. DAISY C. DAVIS, *Respondent.*[1]

*Lawrence H. Brown,* for appellant.

*Brown & Brown,* for respondent.

SCHWELLENBACH, C. J.—This is an appeal from a portion of an order of confirmation in a partition suit, denying a petition regarding a homestead; declaring the homestead claim void; and directing that appellant's share of the proceeds of the sale of the partitioned property be applied to the payment of a judgment in favor of respondent against appellant.

Daisy C. Davis and Evelyn D. Clark are mother and daughter. In 1943 they jointly bought a house at 2727 West Cleveland in Spokane. The daughter occupied the front apartment and the mother occupied the rear one. January 1, 1947, Mrs. Clark rented her apartment, furnished, to people named Brewer and moved out to a place called Nine Mile Falls. Her family consists of her husband, an old age pensioner, age sixty-nine, who does not work; two children of a prior marriage, a boy, sixteen, and a girl, fifteen; and a boy, two-and-one-half, a child of this marriage. Mrs. Clark works in Spokane and neighbors at Nine Mile, named Reilly, take care of the baby.

[1] Reported in 226 P. (2d) 904.

Trouble arose between mother and daughter with the result that three actions were instituted: an accounting suit by the mother against the daughter; a partition suit by the daughter against the mother; and an abuse of process suit by the daughter against the mother. The three cases were consolidated for trial and judgments rendered October 22, 1949. The mother recovered judgment in the accounting suit in the amount of $2,328.72. The daughter recovered judgment in the abuse of process suit in the amount of $50. In the partition suit, the court found the daughter and mother to be each the owner of an undivided one-half interest in the property, found that no partition thereof could be made, and ordered it sold. The court ordered certain proceeds of the sale to be applied to costs and prior liens, and ordered that the balance be divided between Mrs. Clark and Mrs. Davis.

This occurred October 22, 1949. On the same day, Mrs. Clark's tenants, the Brewers, acknowledged receipt of a notice of termination of their tenancy and agreed to vacate by November 15th. The following day, October 23rd, Mrs. Clark and her family moved into an upstairs room over the apartment, which they occupied until the Brewers left. This was a small room which had been used for storage. The stairway opens from the kitchen of the front apartment and also from a hall between the two apartments. All that was moved from Nine Mile to this room was a bed, bedding and some boxes. Mrs. Clark owned the furniture in the Brewer apartment. Her husband did not stay there all the time, but Mrs. Brewer testified that he stayed there many nights. The baby remained at Nine Mile with the Reillys most of the time.

October 27th, Mrs. Clark filed a declaration of homestead on her interest in the house at 2727 West Cleveland. Mrs. Davis then had execution issued on her judgment against Mrs. Clark, and the sheriff advertised a sale of Mrs. Clark's interest, which sale was restrained by the court until it could determine the rights of the parties with respect to Mrs. Clark's declaration of homestead. This appeal, as heretofore stated, is from the trial court's adverse ruling against

Mrs. Clark, on its finding that she did not file her declaration of homestead in good faith.

"Homestead laws are not founded on the principles of equity, but are enacted as a matter of public policy in the interest of humanity. Their purpose is to provide a home for each citizen of the government, where his family may be sheltered and live beyond the reach of financial misfortune, and, likewise, their purpose is to encourage and provide home ownership, to inculcate in individuals those feelings of independence which are essential to the maintenance of free institutions, to protect society from the danger of citizens becoming paupers, and, in general, to promote the stability and welfare of the state. These laws are based on the theory that the preservation of the homestead is of greater importance than the payment of debts, and their purpose is to protect the family as a whole, and not merely the individual who for the time being is the head of the family. It is not their purpose, however, to enable one to escape just liabilities or to perpetrate a fraud or injustice." 40 C.J.S. 431, Homesteads, § 2.

We find it necessary to review some of our decisions dealing with the question of good faith in filing declarations of homestead. In *Schoenheider v. Tuengel*, 96 Wash. 103, 164 Pac. 748, appellant, having filed a declaration, sought to enjoin a sale of the property. He claimed to be the head of a family, alleging that he had residing with him on the premises, a minor son, and an adult daughter who was unable to support herself. The testimony showed that, after a judgment had been rendered against him, he went onto the premises in question, consisting of about forty acres of raw, unimproved land, and built a small shack thereon. He and his daughter moved there, but spent most of their time in town, or visiting in the east. At the time of the trial, no clearing or improvement of any kind had been done on the land. In affirming a judgment dismissing the action, this court said:

"The facts to which we have referred, in the light of the details gathered from careful examination of the record, convince us that appellant never intended in good faith to occupy the land as a home for himself and his son. His pretended residence was merely colorable, and the filing of

the declaration of homestead was not for the purpose of establishing and maintaining a home, but was solely for the purpose of defeating his creditors.

" 'If the intention of the debtor when he occupies land as a homestead is not only to make it his present home, but also to prevent creditors from collecting their debts by subjecting the property thereto, the exemption may nevertheless be secured; but in the absence of good faith upon the debtor's part in respect to occupancy of the property no homestead can be obtained by him.' 21 Cyc. 471.

"The idea of *home* is the very foundation rock upon which all homestead laws are based, and unless it is the honest intention of the declarant to actually occupy the premises as a home, he is not within the protection of the statute. We are not unmindful of the rule that statutes of this character are not in derogation of the common law, but are to be liberally construed to the end that the wise and benevolent policy which prompted their enactment may be carried into effect. At the same time, it is equally the duty of the courts not to permit these humane laws to be prostituted and perverted to the purpose of enabling an unscrupulous debtor to avoid the payment of his honest obligations by resorting to their provisions as a mere subterfuge with no honest intention or purpose of occupying the land as a home."

In *Canadian Bank of Commerce v. Kellough,* 142 Wash. 335, 253 Pac. 124, there had been distributed to Kellough and his sister, each an undivided one-half interest in a tract of land and the residence thereon. The property had been rented to one Dr. Denny. Without an attempt to terminate the tenancy, Kellough, by subterfuge, gained admission to the upstairs of the house, which was not being used by the tenant. He brought his family and a few household necessaries. Upon threats of the tenant, he left after spending two nights there. During that time, however, he filed a declaration of homestead. The trial court held that the declaration was filed in good faith, but decided as a matter of law that the owner may not claim a homestead while the relationship of landlord and tenant exists. In affirming the judgment we said:

"Appellant urges that the court erred in holding that he could not make a valid homestead during the occupancy of the premises by a tenant. This, evidently, upon the theory

that the court held that one must be living upon the premises to avail himself of the provisions of the statute. If this was the intent of the holding, we cannot agree with such a narrow view of the statute, for it must often happen that one has inherited or purchased premises upon which there is a tenant at the time who cannot be dispossessed except by the notices provided by law. Obviously, in such a situation, the owner may avail himself of the benefit of the statute by declaring that he intends to use the same for a home and by taking such other steps to dispossess the tenant as will allow him to move upon the premises and use them as a home. But in the present case we find that the appellant did not take any action to obtain possession. True, he attempted to enter into possession and be physically thereon with intent to file his declaration; but, as we have already seen, he did this by subterfuge and his action can hardly be characterized as being in good faith; and in so far as the court found that the declaration was filed in good faith, we must hold that this was error. It is apparent that the purpose of filing this declaration was to avoid the execution upon his property. This purpose will not of itself vitiate the declaration of homestead as long as it is accompanied by acts showing that the premises are used, or intended to be used, as a home. *Gullickson v. Fenlon,* 48 Wash. 503, 93 Pac. 1074; *Schoenheider v. Tuengel,* 96 Wash. 103, 164 Pac. 748. It is also clear that this pretended residence was to legalize, if possible, the declaration of homestead by residing on the premises. In construing a homestead declaration, it must always be borne in mind that the intent of the law is to provide a shelter for the family. The statute, Rem. Comp. Stat., § 552 [P. C. § 7883], does not exempt a piece of property worth a certain sum, but exempts a home. But it was never intended by appellant that he should reside on the premises as a home, for, if such had been his intention and the tenant had refused to allow him to stay thereon, he would have taken immediate action to secure possession as soon as the law would permit. This he did not do, and made no attempt whatever until after judgment was had, execution issued, and the property sold. This was too late. An examination of the evidence convinces us that it preponderates against the finding of the trial court that the declaration of homestead was filed in good faith."

In *Traverso v. Cerini,* 146 Wash. 273, 263 Pac. 184, a declaration of homestead was filed July 23, 1924. The property was not used for a home but was devoted exclusively

to other purposes. However, the declaration stated that the property was purchased for a home and was intended to be used as such. Nothing was done to convert it into a home, and, in the meantime, a judgment was entered against the owners. On execution, the property was advertised for sale as of April 16, 1927. April 12, 1927, a second declaration was filed, containing the same allegations as the first one. We held there was a lack of good faith because the claimant suffered three years to elapse without any effort to occupy the property or fit it up as a home. We said:

"But there must be, in every such case, a good faith intent to occupy the premises as a homestead, and this intent must be shown by something more than by mere declarations."

For a similar situation, see *In re Leupp's Estate,* 153 Wash. 218, 279 Pac. 579.

In *Moe v. Becher,* 146 Wash. 128, 262 Pac. 144, Mr. and Mrs. Wolter owned property in Everett, on which there was a small dwelling house and in which they lived with their three minor children. In the early winter of 1923, Mr. Wolter went to Los Angeles where he found employment. Shortly after his departure, appellant Moe brought an action against Wolter and recovered judgment January 24, 1924. February 5, 1924, Mrs. Wolter filed a declaration of homestead on the property. February 27, 1924, respondent purchased the property from the Wolters and moved into possession. Shortly thereafter, the Wolters moved to California. In the meantime, the property was sold to appellant in execution of his judgment. We held that, at the time Mrs. Wolter made her declaration of homestead, she actually intended that the property should be used for a home, and that the filing of the declaration was made in good faith. We pointed out:

"Section 559, in specifying what the homestead declaration shall contain, among other things, requires that the claimant shall intend to reside thereon. Rem. Comp. Stat., §§ 552 and 559 [P. C. §§ 7883, 7890], have been construed in *Wentworth v. McDonald,* 78 Wash. 546, 139 Pac. 503, and *Byam v. Albright,* 94 Wash. 108, 162 Pac. 10, *as having reference only to the 'qualifications of the claimant to assert a homestead right at the time of filing the homestead declara-*

*tion, and not to the continuing of such right thereafter.'"*
(Italics ours.)

See, also, *In re Finch's Estate*, 198 Wash. 567, 89 P. (2d) 218, for an exhaustive discussion of the homestead statutes and cases interpreting them.

■ Was Mrs. Clark's declaration of homestead made in good faith, or was it done as a mere subterfuge with no honest intention of using it as a home? It is quite apparent that the purpose of filing the declaration was to avoid the execution upon her share of the proceeds of the sale of the property. But we have held that this purpose will not of itself vitiate the declaration as long as it is accompanied by acts showing that the premises are used, or intended to be used, as a home. The Clarks did not own the property at Nine Mile. They did not rent it. Mr. Clark was merely the caretaker for his daughter. Mrs. Clark was actually the head of the household. She was the breadwinner. Her husband was an old age pensioner and was not employed. By the decree in the partition suit entered October 22nd, Mrs. Clark was declared to be owner of one half of the proceeds of the sale, as her separate property. She knew that her mother would execute on that share, in order to collect her (the mother's) judgment against Mrs. Clark. She was confronted with the immediate problem of providing a shelter for her family. She did not act surreptitiously, as was done in the *Kellough* case. She went openly to her tenants and obtained a release from them. In the meantime she moved into the upstairs room with her family, where they remained until the tenants moved out, and then she and her family moved into the apartment.

Our most serious problem is to decide how she could, in good faith, have intended to reside on the premises when, at the time she filed her declaration, the property had been ordered sold in the partition suit which she, as plaintiff, had instituted. However, she attended the sale and, according to the testimony of Mr. Brede (the referee who conducted the sale), made several bids. She had with her a cashier's check for five hundred dollars to make the earnest money

payment, as required by the notice of sale. It was testified, without objection, that she had also contacted a bank concerning a loan in the event she was the successful bidder, and the bank agreed to loan her the money.

We are of the opinion that Mrs. Clark was actuated by a sincere desire to provide a shelter for her family, and that, at the time she filed her declaration of homestead, she, in good faith, actually intended to occupy the premises with her family as a home.

That portion of the order of confirmation concerning the homestead rights of appellant is reversed, and the cause remanded with directions to correct the order of confirmation to conform with the views expressed herein.

BEALS, HILL, GRADY, and DONWORTH, JJ., concur.