**In re Ronald Lee WILSON, Debtor.**

**Ronald Lee Wilson, Appellant,**

**v.**

**Peter H. Arkison, Chapter 7 Trustee; Mary Wilson, Appellees.**

**BAP No. WW–05–1054–KSD. Bankruptcy No. 04–23672.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on Jan. 19, 2006 at Seattle, Washington.

Originally Filed—Feb. 27, 2006.

Revised and Ordered Published— March 22, 2006.

Thomas E. Lester, Bellingham, WA, for Debtor.

Before: KLEIN, SMITH and DUNN,[1] Bankruptcy Judges.

## OPINION

KLEIN, Bankruptcy Judge.

The bankruptcy court sustained the trustee's objection under Washington law to the debtor's claim of an exempt homestead in a residence that the debtor no longer owned and from which he had been removed by a prebankruptcy state-court order. We AFFIRM.

## FACTS

Ronald Wilson, the debtor and appellant herein, commenced a chapter 7 bankruptcy case on October 21, 2004, listing an address in Bellingham, Washington, as his residence.

Seventeen days earlier, on October 4, 2004, the debtor recorded a homestead declaration in which he averred that he was residing, or intended to reside, at real property in Ferndale, Washington. However, he had been judicially "divested" of that property and had vacated under compulsion of a state-court order.

A divorce decree entered by the Whatcom County (Washington) Superior Court on May 21, 2004, (and not appealed) awarded the Ferndale residence (where the debtor had lived alone since 2001) to his former spouse, declared that the debtor was "divested of his interest in [the] property," and directed that his former spouse take prompt physical possession of the residence and sell it. The decree also provided that, although "divested" of his interest in the property, the debtor would receive one-half of the sale proceeds, less two debts totaling $4,200.

In his bankruptcy case, the debtor scheduled a one-half interest in the Ferndale residence notwithstanding that he had been "divested" of his ownership interest and had not occupied the property since June 2004. He also claimed the residence as exempt in the amount of $40,000 in Schedule C pursuant to Revised Code of Washington ("RCW") 6.13.010, 6.13.020, and 6.12.030.[2]

The debtor did not learn until after filing bankruptcy that the Ferndale residence was sold on October 12, 2004, with proceeds of about $84,000 held in a blocked account per state-court order.

Upon learning of the sale, the debtor notified the trustee, appellee Peter Arkison, who demanded turnover of the proceeds and timely objected to the claim of exemption.[3]

Specifically, the trustee objected that the debtor did not show: (1) that he resided on the property when the petition was filed so as to qualify for the automatic homestead exemption under RCW 6.13.030 and 6.13.040; (2) that he had filed the

---

1.  Hon. Randall L. Dunn, United States Bankruptcy Judge for the District of Oregon, sitting by designation.

2.  In text, we use the form "RCW xxx" used in Washington practice instead of the "Bluebook" form "Wash. Rev.Code § xxx" that we use in formal citation.

3.  The debtor's former spouse commenced an adversary proceeding regarding the sale proceeds. The bankruptcy court ordered one-half of the funds turned over to the former spouse and remainder to the trustee. That order is not implicated in this appeal.

Declaration of Homestead required by RCW 6.13.040 if he was not living on the property when the petition was filed; or (3) that he had filed a declaration that he had not abandoned his interest in the property, as required by RCW 6.13.050.

The debtor responded that, by recording a homestead declaration, he had complied with Washington law and that, having done all he could do under the circumstances, he should not be disadvantaged by the fact of having been compelled to vacate the premises by a state-court order. In addition, he contended it was still timely to file a declaration of non-abandonment of homestead because he was excluded from the Ferndale residence less than six months before he filed his bankruptcy case. He did not, however, address the implications of the divestiture of his property interest that had occurred by virtue of the final and unappealed divorce decree or the implications of the intervening sale.

At the hearing, the parties treated the facts as not in controversy and did not proffer evidence. No findings were made.

The court noted that Washington law created a dilemma for the debtor by requiring him either to reside on the property or to have an intent to reside there. Not only had he vacated the premises, the state-court's exclusion order made it impossible for him to "intend" to reside there.

The court concluded that the debtor could not in good faith aver in a homestead declaration that he intended to live at the residence in the face of a final divorce decree that "divested" him of ownership and ordered him to vacate. His intent, it noted, was "not a reality because he's been thrown out." Nor did the expression of a wish to request that the divorce decree be set aside suffice to supply the requisite intent.

Thus, conceding that the situation paradoxically led to loss of a homestead exemption that would otherwise have been available, the court sustained the objection. This timely appeal ensued.

## JURISDICTION

The bankruptcy court had jurisdiction via 28 U.S.C. § 1334. We have jurisdiction under 28 U.S.C. § 158(a)(1).

## ISSUE

Whether the debtor had a good faith intent to reside at property in which, when he recorded a Washington declaration of homestead, he no longer owned a legal or equitable interest, that was in the process of court-ordered sale, and from which he had been removed pursuant to court order.

## STANDARD OF REVIEW

We review de novo a decision construing a state's statutory exemption and predict how the state's supreme court would rule on the question. *Kearns v. Transam. Home Loan (In re Kearns)*, 314 B.R. 819, 822 (9th Cir. BAP 2004). Since the bankruptcy court neither took evidence and nor made findings of fact and conclusions of law, the procedure followed most closely resembles that of summary judgment, which we review de novo. *Id.*

## DISCUSSION

The debtor's inescapable dilemma is one of timing. Applying Washington law by virtue of 11 U.S.C. § 522(b), the pre-bankruptcy declaration of homestead was ineffective, and, when the bankruptcy commenced, the debtor was not otherwise entitled to a homestead.

A Washington homestead consists of real or personal property that must be actually intended or used as the principal

home of the owner. Wash. Rev.Code § 6.13.010(1) (2004).[4]

I

■ Although Washington does not require that the homestead "owner" have a legal interest in the property and deems occupancy and use as the key to the right to homestead, one must, when there is not occupancy and use, have at least an equitable interest in the property in order to have a homestead. *Felton v. Citizens Fed. Sav. & Loan Ass'n of Seattle*, 101 Wash.2d 416, 679 P.2d 928, 930 (1984). Here, the

debtor had neither legal nor equitable interest in light of the terms of the state-court order.

■ Washington has two basic methods for establishing a homestead. *Arkison v. Gitts (In re Gitts)*, 116 B.R. 174, 178 (9th Cir. BAP 1990), *aff'd & adopted*, 927 F.2d 1109 (9th Cir.1991). First, under RCW 6.13.040(1),[5] an automatic homestead exemption is created for "[p]roperty described in RCW 6.13.010 [which] constitutes a homestead and is automatically protected by the exemption described in RCW 6.13.070 [6] from and after the time

**4.** That section of RCW provides in pertinent part:

(1) The homestead consists of real or personal property that the owner uses as a residence. In the case of a dwelling house or mobile home, the homestead consists of the dwelling house or the mobile home in which the owner resides or intends to reside, with appurtenant buildings, and the land on which the same are situated and by which the same are surrounded, or improved or unimproved land owned with the intention of placing a house or mobile home thereon and residing thereon. A mobile home may be exempted under this chapter whether or not it is permanently affixed to the underlying land and whether or not the mobile home is placed upon a lot owned by the mobile home owner. Property included in the homestead must be actually intended or used as the principal home for the owner.

Wash. Rev.Code § 6.13.010(1) (2004).

**5.** That section of RCW provides, in pertinent part:

(1) Property described in RCW 6.13.010 constitutes a homestead and is automatically protected by the exemption described in RCW 6.13.070 from and after the time the real or personal property is occupied as a principal residence by the owner or, if the homestead is unimproved or improved land that is not yet occupied as a homestead, from and after the declaration or declarations required by the following subsections are filed for record or, if the homestead is a mobile home not yet occupied as a homestead and located on land not owned by the

owner of the mobile home, from and after delivery of a declaration as prescribed in RCW 6.15.060(3)(c) or, if the homestead is any other personal property, from and after the delivery of a declaration as prescribed in RCW 6.15.060(3)(d).

(2) An owner who selects a homestead from unimproved or improved land that is not yet occupied as a homestead must execute a declaration of homestead and file the same for record in the office of the recording officer in the county in which the land is located. However, if the owner also owns another parcel of property on which the owner presently resides or in which the owner claims a homestead, the owner must also execute a declaration of abandonment of homestead on that other property and file the same for record with the recording officer in the county in which the land is located.

(3) The declaration of homestead must contain: (a) A statement that the person making it is residing on the premises or intends to reside thereon and claims them as a homestead . . . .

Wash. Rev.Code § 6.13.040 (2004).

**6.** That section of RCW provides in pertinent part:

(1) Except as provided in RCW 6.13.080, the homestead is exempt from attachment and from execution or forced sale for the debts of the owner up to the amount specified in RCW 6.13.030. The proceeds of the voluntary sale of the homestead in good faith for the purpose of acquiring a new homestead, and proceeds from insurance

the property is occupied as a principal residence by the owner." *Id.*

█ The second way to establish a homestead is for an owner to declare a homestead. *Gitts,* 116 B.R. at 178. "[I]mproved land that is not yet occupied as a homestead" is protected by the exemption from and after the time the declaration is filed for the record. *Id.;* Wash. Rev.Code § 6.13.040(1) (2004). In order to "establish a valid declared homestead exemption, an owner must intend to reside on the property, record a declaration of homestead, and record a declaration of abandonment of any automatic homestead or any existing declared homestead." *Gitts,* 116 B.R. at 178.

█ While exemptions are determined as of the date of bankruptcy, the validity of a declared Washington homestead requires focus on the time the declaration is recorded. *Cisneros v. Kim (In re Kim),* 257 B.R. 680, 684 (9th Cir. BAP 2000), *aff'd,* 35 Fed.Appx. 592 (9th Cir.2002); *Wolf v. Salven (In re Wolf),* 248 B.R. 365, 367–68 (9th Cir. BAP 2000).

## II

█ Under RCW 6.13.040(1), homestead protection is "automatic" if the occupancy requirement is met. Wash. Rev.Code § 6.13.040 (2004); *Gitts,* 116 B.R. at 178; *Sweet v. O'Leary (In re Sweet),* 88 Wash. App. 199, 944 P.2d 414, 415 (1997).

Here, at the time the debtor filed his petition, he did not occupy the residence. Pursuant to the decree of dissolution, he could no longer occupy the residence and had been "removed" from the residence four months before he filed his petition. Consequently, the debtor did not occupy

the property and, thus, was not entitled to Washington's automatic homestead exemption.

## III

█ The remaining method for the debtor to exempt the property was to record a declaration establishing his intent to reside there. Wash. Rev.Code. §§ 6.13.010(1) & 6.13.040(3) (2004). Hence, the pivotal issue at the bankruptcy court was whether the debtor satisfied the intent requirement of a declared homestead.

Ordinarily, intent is an inherently subjective matter that is poorly suited to summary disposition. In this instance, however, the crucial fact was beyond dispute: any "intent" to reside on the property in the future was impossible in light of the order excluding the debtor, divesting his ownership, and requiring sale.

The debtor contends that although no cases squarely address the intent issue, there are cases that address the requirement that a homestead declaration be filed in "good faith," which has been construed to mean that the statement of intent must be accurate. *Heck v. Kaiser Gypsum Co.,* 56 Wash.2d 212, 351 P.2d 1035, 1036 (1960); *Clark v. Davis,* 37 Wash.2d 850, 226 P.2d 904, 908 (1951).

In *Clark,* the Washington Supreme Court had to decide "how [Clark] could, in good faith, have intended to reside on the premises when, at the time she filed her [homestead] declaration, the property had been ordered sold in the partition suit which she, as plaintiff, had instituted." *Clark,* 226 P.2d at 908. Ultimately, it ruled that at the time Clark "filed her

covering destruction of homestead property held for use in restoring or replacing the homestead property, up to the amount specified in RCW 6.13.030, shall likewise be

exempt for one year from receipt, and also such new homestead acquired with such proceeds.

Wash. Rev.Code § 6.13.070 (2004).

declaration of homestead, she, in good faith, actually intended to occupy the premises with her family as a home," which conclusion followed from a record showing that Clark attended the partition sale and made bids: "She had with her a cashier's check for $500 to make the earnest money payment as required by the notice of sale. It was testified without objection that she had also contacted a bank concerning a loan in the event she was the successful bidder, and the bank agreed to loan her the money." *Id.*

Although the debtor contends that he should prevail under the rule in *Clark* because he executed his declaration of intent to occupy in good faith, *Clark* does not help him. The problem is that the record is devoid of summary judgment evidence that would corroborate the existence of an actual good faith intent or, as in *Clark,* establish that he took actions preparatory to purchasing the property for his own account.

On the record before us, there is only the debtor's homestead declaration on a standard pre-printed legal form, the dissolution order terminating his ownership interest and excluding him from the property, and the debtor's declaration asserting that he had no intention of abandoning his interest in the property when he was forced to find other living arrangements and that in order to protect his homestead interest he filed a declaration. His declaration does not speak either to his good faith or to his intention to return to the property. Nor, as noted, does the record contain summary judgment evidence suggesting that the debtor took affirmative steps to return to the property or either to establish or to retain an ownership interest in the property.

The bottom line is that a Washington homestead declaration "must speak the truth" in order to be valid. *Bank of*

*Anacortes v. Cook,* 10 Wash.App. 391, 517 P.2d 633, 637 (1974) ("*Cook*"). In other words, it must accurately reflect the declarant's true intent. *Heck,* 351 P.2d at 1036 (factual indicia contradicted intent); *Clark,* 226 P.2d at 908 (factual indicia supported intent).

Factually, it is beyond cavil that, when the debtor executed and recorded his declaration, he neither resided on the premises nor, as a matter of law, could reside there in the future because the divorce decree "divested" him of his property interest and required that he be physically excluded from the property. To the extent that the debtor nevertheless "intended" to return to the property, the probability of a return in such circumstances was too remote to be material. Hence, his homestead declaration did not "speak the truth."

We reject the suggestion that *Gitts* controls this appeal. *Gitts* is inapposite as the debtors in that case were, as a matter of law and fact, entitled to a Washington homestead and entitled to switch their homestead to another property. *Gitts,* 116 B.R. at 180. That is not the situation in this appeal.

Although the analysis is technical, the state supreme court has held it to be "well settled" under Washington law that "a declaration of homestead is a right or privilege given a property owner by statute, so that its validity depends upon compliance with the statutory requirements and only by such compliance does the homestead come into existence." *Cook,* 517 P.2d at 636.

In this instance, the debtor did not comply with the statutory requirement that he actually "intend" to occupy the residence. Hence, his prebankruptcy declaration was not effective. The facts do not warrant

28

entitlement to a homestead as of the date of filing of the bankruptcy.

CONCLUSION

For the foregoing reasons, we AFFIRM.